LAURA VEGA PORTO, Plaintiff and Appellant, *v.* ALBERTO TOSSAS, Individually, ETC., ET AL., Defendants and Appellees.

No. 9816. Argued February 1, 1949.—Decided July 28, 1949.

*M. Rodríguez Alberty* for appellant. *Ernesto Ramos Antonini* and *Alberto Porrata Doria* for appellee Tossas. *Ernesto Agostini* for appellee Calderón.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

On February 24, 1944, Laura Vega Porto brought a civil action against her ex-husband Alberto Tossas. The action was brought against Tossas individually and against Tossas assisted by his legal guardian María Tossas Ortíz, for the liquidation of the conjugal partnership dissolved when a judgment of divorce entered on May 24, 1943 became final. The complaint was answered by the guardian on behalf of Tossas.

On August 8, 1947 Pedro Roberto Calderón appeared in the action asking to be considered as party defendant in substitution of defendant Tossas under the allegation that the guardianship imposed on the latter had ceased by judicial order of March 27, 1946, and that by deed No. 7 of September 15, 1947, executed before Notary Ricardo R. Rivera Correa, he had acquired from Tossas, by purchase, assignment, and conveyance in his favor, all his rights and actions in the property of the conjugal partnership, the liquidation of which was sought in the action.[1]

In the motion for substitution of parties the lower court decided that Pedro Roberto Calderón be considered as codefendant together with defendant Tossas, and that said order would not constitute an impediment later on to the allowance, if proper, of the substitution sought.

After a conference held before the trial in which the parties entered a stipulation on the property belonging to the conjugal partnership and on that separately owned by defendant, and in which it was also agreed that there were no debts at the time of the dissolution of the conjugal part-

---

[1] It was alleged in the motion for substitution of parties that clause 2 of the deed expressly stated that "the purchaser Pedro Roberto Calderón shall be and is subrogated in all the rights and actions of the vendor Alberto Tossas as partner of the above-mentioned conjugal partnership Tossas-Vega Porto, with power to substitute Alberto Tossas in the action for liquidation of the conjugal partnership and other relief. The record before us shows that the deed was recorded, with reference to other complementary documents, as to several of the properties described therein, and that the recording of the deed would be subject to the liquidation of the conjugal partnership existing between Alberto Tossas and Laura Vega Porto.

nership, a hearing of the case on its merits was held, and during its course the parties expressed themselves in agreement with the stipulation.

On January 13, 1948, judgment was rendered by the lower court in accordance with the terms of the stipulation. The court also held that once the final accounts of the receiver, in the receivership to which the property had been submitted in the action of divorce, were approved by the court, disposition would be made in a subsequent order of the money involved in the receivership, and that the court would determine what in law and in accordance with the judgment would correspond to the plaintiff and to the defendant. Lastly, the court held that by virtue of deed No. 7 of February 15, 1947, and in accordance with the petition made by the codefendant Calderón in his motion of August 8, 1947, with which defendant Tossas agreed, the former was held as subrogated "in all the rights granted by this judgment to the defendant Alberto Tossas with regard to the separate and community property of the latter."

Thereupon plaintiff appealed to this Court, and although in her brief she does not make a specific assignment of errors as required by Rule No. 11 of this Court, she suggests rather than contends, that the lower court erred (1) in considering as good the sale, assignment, and conveyance by defendant of his rights and actions in the conjugal partnership before it had been finally liquidated and in joining the purchaser of said rights as party to the action for the liquidation of the conjugal partnership; (2) in not holding that the defendant Tossas was mentally incapacitated and could not make such sale at the date of the sale, assignment, and conveyance above referred to; and (3) in not holding that at that date Tossas had no capacity to alienate or transfer his rights in the conjugal partnership since he was under civil interdiction by reason of a conviction of the crime of murder in the second degree for which he had received a sentence that had been suspended.

■■ In accordance with § 1315 of the Civil Code, 1930 ed., read together with § 105 of the same Code, the conjugal partnership ceases upon the dissolution of the marriage by judgment of divorce. *Garrozi* v. *Dastas*, 204 U. S. 64, 51 L. ed. 369; *Pérez* v. *Registrar*, 62 P.R.R. 760; Cf. *Fabián* v. *Registrar of San Juan*, 25 P.R.R. 838. Section 1316 provides that upon the dissolution of the partnership an inventory shall be made; § 1319 that after the debts, charges, and obligations of the partnership have been paid, the capital of the husband and wife shall be liquidated and paid, in so far as the inventoried estate may reach; and § 1322 that the net remainder shall be divided, share and share alike, between the husband and the wife or their respective heirs. *Garrozi* v. *Dastas, supra.* Appellant contends that the previous liquidation of the conjugal partnership was necessary in order that defendant could alienate his rights therein after termination of the partnership by divorce. We do not agree.

We have decided that the liquidation of the conjugal partnership is not a previous or indispensable requisite for the widow or the heirs of the deceased spouse to lawfully sell their common and undivided interest in a property belonging to the conjugal partnership, such liquidation being indispensable only for the alienation of certain and specific portions of property of the partnership. *Escalera* v. *Falú et al.*, 19 P.R.R. 716. Likewise, that the contract of sale of indeterminate shares in the conjugal property made by the surviving spouse before the liquidation of the conjugal partnership constitutes an alienation of choses in action and not a sale of the property or any fixed part thereof, without it being a bar to such alienation that the liquidation of the conjugal property had not been effected. *Cortés* v. *Registrar*, 20 P.R.R. 131; *González* v. *Méndez et al.*, 8 P.R.R. 249. And similarly, that a conveyance of the undivided interest of a divorced wife or of any right, title, and interest which she could have in

a parcel of land subject to the final liquidation of the conjugal partnership already made or to be made, was recordable. *Maldonado* v. *Registrar*, 45 P.R.R. 816.

In the case at bar defendant sold, assigned, and conveyed in favor of a third person—Calderón—all his rights and actions in the conjugal partnership. Determinate property belonging to the partnership was not sold. Calderón recorded the rights thus acquired in the registry of property subject to the liquidation of the conjugal partnership of plaintiff and defendant Tossas. Therefore, it was not an indispensable requisite to wait until the final liquidation of the conjugal partnership in order that defendant be able to alienate his rights and actions therein.[2] *Pérez* v. *Registrar*, *supra;* 9 Manresa, *Comentarios al Código Civil*, 1930 ed., p. 623.

In the case at bar the plaintiff, in accord with defendant Tossas and codefendant Calderón, stipulated what was the community property and its valuation. Her share in the conjugal partnership remained intact without it being affected in any manner by the alienation by Tossas of his undivided share. Therefore, the lower court did not err in joining Calderón as codefendant and in rendering judgment subrogating him in the rights and actions of Tossas in the suit, since Calderón was already subrogated to the rights and actions of Tossas in the conjugal property.

The errors suggested in the brief of appellant to the effect that at the date of the alienation of the rights and actions, Tossas was mentally incapacitated and also incapaci-

---

[2] By § 1298 of the Civil Code, 1930 ed., the conjugal partnership shall be governed by the rules of the partnership contract in all that the rules do not conflict with the express provisions of the Section applicable to the conjugal partnership. Similarly as in cases of dissolution of partnership, in which during the period of liquidation the partners become joint owners, *People* v. *Heirs of José González & Company, S. en C., per curiam*, dissolution of partnership No. 5, decided on July 11, 1949; *Heirs of Jiménez* v. *Registrar*, 48 P.R.R. 837; *Miramar Realty Co., Ltd.* v. *Registrar*, 44 P.R.R. 808, the divorced spouses have also the condition of joint owners of the community property until the conjugal partnership is liquidated.

tated by civil interdiction, lack merit. The record shows that on March 27, 1946, the lower court decreed the termination of the guardianship imposed on defendant, since the cause giving rise thereto had ceased. The alienation of the rights and actions of Tossas in the conjugal partnership in favor of Calderón was not made until February 15, 1947. Therefore, Tossas had again acquired before the sale or conveyance his full legal capacity previously restricted by the guardianship by reason of his mental incapacity.

■ The contention of appellant to the effect that the order of the court terminating said guardianship was not justified because medical evidence was not introduced to determine whether Tossas had recovered his mental capacity, cannot be passed on appeal in this suit, since the only thing that the record shows is the order terminating the guardianship issued by the lower court in a proceeding foreign to this suit.

■ As to his incapacity under civil interdiction, the record shows that the sentence was suspended under the provisions of Act No. 259 approved April 3, 1946. However, it is unnecessary for us to consider, in order to decide on the alleged incapacity of Tossas on such ground, whether a convict 'to whom by virtue of said Act "the effect" of the sentence [3] has been suspended is, for other purposes, under civil interdiction. For the purposes of carrying out, as Tossas did, a sale or conveyance of property, he would not be under civil interdiction, in the same manner as a convict would not be to whom the benefit of a probatory sentence under the said Act were not granted, since the civil interdiction arising from a sentence of imprisonment in the penitentiary for any term less than life imprisonment, pursuant

---

[3] Section 2 of Act No. 259, approved April 3, 1946, establishing suspended sentences in the courts of justice of Puerto Rico, provides the suspension of "*the effect* of the sentence imposed"; § 4 ratifies this concept in its provisions for the revocation of "the probation period, should this period be still unexpired, or of the suspension of *the effects* of the sentence, if the probation period has expired." (Italics ours.)

to § 20 of the Penal Code,[4] or from a sentence of imprisonment for life, pursuant to § 21 of said Code,[5] does not affect by express provision of § 22 of the same Code,[6] the capacity of the person so sentenced for "making and acknowledging a sale or conveyance of property." Therefore, civil interdiction as a restriction on the legal capacity, covers pursuant to § 25 of the Civil Code,[7] all the cases which §§ 20 and 21 of the Penal Code embody with the exceptions provided in § 22, among which, as we have seen, is the one connected with the capacity for making and acknowledging the sale or conveyance of property. This being so, Tossas did not need a guardian either under subdivision 4 of § 168 of the Civil Code, 1930 ed., which provides that, among others, "persons under sentence of civil interdiction," are subject to guardianship, for the purpose of making a sale or conveyance of his rights and actions in the conjugal partnership already terminated, since the restriction on his capacity by reason of the sentence of temporary imprisonment did not comprise sales or conveyances made by him.

Since in our judgment the errors assigned by the appellant are nonexistent, the judgment appealed from is affirmed.

---

[4] "Section 20.—*Imprisonment, Effect of.* A sentence of imprisonment in the penitentiary for any term less than for life suspends all the civil rights of the person so sentenced, and forfeits all public offices and all private trusts, authority, or powers during such imprisonment."

[5] "Section 21.—*Imprisonment for life, Effect.* A person sentenced to imprisonment in the peniteniary for life is thereafter deemed civilly dead."

[6] "Section 22.—*Capacity of persons imprisoned.—As witnesses.—To acknowledge sale or conveyance of property.* The provisions of the last two preceding sections must not be construed to render the persons therein mentioned incompetent as witnesses upon the trial of a criminal action or proceeding, or incapable of making and acknowledging a sale or conveyance of property."

[7] Section 25 of the Civil Code, 1930 ed., provides: "Personality and civil capacity are extinguished by death. Minority, insanity, prodigality, deaf-mutism, habitual drunkenness and the loss of civil rights are only restrictions upon the civil capacity."